UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARRY RODRIGUEZ,

    Plaintiff,

v.                                 Case No.:  8:21-cv-3002-DNF

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

_____

# OPINION AND ORDER

Plaintiff Harry Rodriguez seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on July 23, 2020, alleging disability beginning May 2, 2018. (Tr. 293, 418-19). Plaintiff later amended the alleged onset date to March 17, 2020. (Tr. 17). The

application was denied initially and on reconsideration. (Tr. 293, 312). Plaintiff requested a hearing and on May 5, 2021, a hearing was held before Administrative Law Judge Barbara J. Zanotti ("ALJ"). (Tr. 39-75). On July 14, 2021, the ALJ entered a decision finding Plaintiff not under a disability from March 17, 2020, the amended alleged onset date, through the date of the decision. (Tr. 17-33).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on November 2, 2021. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on December 28, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 9).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 17, 2020, the amended alleged onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar, cervical and thoracic spinal disorders; degenerative joint disease of the hands, shoulders, knees, ankles and right hip; right hip tendinopathy; a right shoulder rotator cuff tear, status post rotator cuff repair and joint ankylosis; left shoulder osteoarthritis and infraspinatus tear; headache; asthma; obesity; an affective

disorder; an anxiety disorder; and post-traumatic stress disorder ("PTSD")." (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can push and pull with the left lower extremity occasionally and with the right lower extremity frequently. The claimant can never climb ladders, ropes or scaffolds and can occasionally climb ramps or stairs. He can never crawl and can occasionally balance, stoop, kneel and crouch. The claimant can reach overhead with the left upper extremity occasionally and with the right upper extremity frequently. He can frequently handle and finger bilaterally. The claimant can have exposure to vibration and can tolerate no more than a moderate noise intensity level, as the term moderate is defined in the SCO. He can experience no more than occasional exposure to extreme cold; humidity; atmospheric irritants such as dust, odors, fumes and gases; and workplace hazards such as unprotected heights and moving machinery. The claimant is able to carry out detailed but uninvolved instructions in the performance of simple, routine tasks involving simple work-related decisions. Work must not require fast-paced production. He can have only occasional changes in the general nature of the workplace or the tasks to be performed, and no more than occasional interaction with the general public.

(Tr. 25).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a supply sergeant. (Tr. 31). At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (52 years old on the amended alleged disability onset date), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 31-32). Specifically, the ALJ found that Plaintiff could perform such occupations as:

    (1)   cleaner/housekeeper, DOT 323.687-014,[1] light, SVP 2

    (2)   cafeteria attendant, DOT 311.677-010, light, SVP 2

    (3)   newspaper carrier, DOT 292.457-010, light, SVP 2

(Tr. 32). The ALJ concluded that Plaintiff had not been under a disability from March 17, 2020, through the date of the decision. (Tr. 32).

## II.    Analysis

On appeal, Plaintiff raises two issues: (1) whether the Commissioner erred in relying on erroneous job incidence testimony; and (2) whether the Commissioner erred in failing to identify, explain, and resolve apparent conflicts between the DOT and vocational witness testimony. (Doc. 13, p. 2).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

### A.     Job Numbers

Plaintiff argues that the vocational expert misreported the number of jobs for the newspaper carrier and cafeteria attendant positions. (Doc. 13, p. 7). Plaintiff claims that the vocational expert appears to have reported the number of jobs for the entire Occupational Employment Statistics ("OES") group rather than the specific occupations of newspaper carrier and cafeteria attendant. (Doc. 13, p. 8). Plaintiff also claims that based on these errors, substantial evidence does not support the ALJ relying on this testimony to conclude that there are a significant number of newspaper carrier and cafeteria attendant jobs in the national economy that Plaintiff is able to perform. (Doc. 13, p. 8-9).

In streamlining the issue, the Commissioner concedes that there is an unresolved conflict between the DOT and the vocational expert's testimony about the newspaper carrier job, and thus does not address Plaintiff's argument about job numbers as to that position. (Doc. 15, n. 6). In that same vein, Plaintiff raises no objections to the vocational expert's testimony about the significant number of jobs – 220,000 – in the national economy for the remaining occupation of cleaner/housekeeper. (Doc. 13, p. 10).

"At step five, an ALJ must ascertain whether [the] jobs [that a claimant can perform] exist[ ] in significant numbers in the national economy." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021) (quotations omitted)

(citing *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1152 (2019)). Whether there are a significant number of jobs in the national economy is a factual issue to be determined by a judicial officer. *Id.* "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (citing 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration approximates the number of positions that exist, whether vacant or filled, and without regard to a claimant's likelihood of being hired. *Id.* (citations omitted). An ALJ may use a vocational expert or other specialist to assist in the step five determination. *Id.* Vocational experts may consult publications such as the DOT – even though it may be outdated – and may also consult other sources to obtain job numbers. *Id.*

In response to a hypothetical here, the vocational expert testified that there were approximately 220,000 cleaner/housekeeper jobs and approximately 115,000 cafeteria attendant jobs in the national economy. (Tr. 65). In the decision, the ALJ found that there were 220,000 cleaner/housekeeper jobs and 115,000 cafeteria attendant jobs in the national economy. (Tr. 32). The ALJ also found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 32).

Plaintiff argues that the vocational expert misrepresented the number of cafeteria attendant jobs. (Doc. 13, p. 8). Plaintiff claims that the vocational expert incorrectly reported the job numbers from Job Browser Pro, by providing the total number of jobs for the OES group and not solely the number of jobs for the DOT code for a cafeteria attendant job. (Doc. 13, p. 8). On review of the Job Browser Pro report in the record, it is unclear whether the vocational expert listed the correct number of jobs for a cafeteria attendant. (Tr. 690). The vocational expert testified that there were approximately 115,000 cafeteria-attendant jobs. (Tr. 65). The job estimate of 115,408 falls under an "OES" group column, while the job estimate of 29,438 falls under the "DOT Code" column. (Tr. 690). Without further explanation by the vocational expert, it is unclear whether there are approximately 115,000 cafeteria-attendant jobs in the national economy for the cafeteria attendant job, DOT 311.677-010, or just 29,438 jobs. Plaintiff argues that the vocational expert incorrectly testified on the number of newspaper carrier and cafeteria attendant jobs and therefore his testimony "lacked a baseline of reliability which makes it insufficient to constitute substantial evidence." (Doc. 13, p. 10).

If these two positions are excluded, the question becomes whether the ALJ's finding of 220,000 cleaner/housekeeper jobs constitutes a significant number of jobs in the national economy, and if so, then would the other jobs-numbers findings constitute harmless error. Plaintiff argues that it is not harmless error because the

ALJ did not make a separate finding that 220,000 cleaner/housekeeper jobs constitute a significant number of jobs in the national economy. Plaintiff relies on *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021).

In *Viverette*, the plaintiff appealed the district court's order affirming the decision of the administrative law judge denying his application for SSI benefits. *Id*. at 1311. The Eleventh Circuit remanded the action in part for the Commissioner to determine what portion of jobs within a relevant Standard Occupation Classification ("SOC") code the plaintiff could perform because the number of jobs may have been overstated. *Id.* at 1319. The vocational expert testified that there were 104,000 document preparer positions, 7,000 final assembler positions, and 14,000 check weigher positions available nationally. *Id.* at 1318. The ALJ referenced the vocational expert's testimony about the jobs numbers collectively and then concluded that the plaintiff was "'capable of making a successful adjustment to other work that exists in significant numbers in the national economy.'" *Id*.

> But [the ALJ] apparently treated the three occupations (one of which we must here assume is off the table) cumulatively for purposes of the "significant numbers" determination, for she did not make any findings about how many jobs were available in the national economy for each of the occupations. In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs.

*Id*. The court found that the ALJ based her findings on a total number of 125,000 jobs for all three occupations, without considering an apparent conflict that affected 104,000 of those jobs. *Id*. "Given that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy." *Id*. The court also found the vocational expert's testimony unreliable because she listed the number of jobs for the SOC code and not for the specific DOT job and she did not know whether the SOC code required level 1 or 2 reasoning or something higher. *Id*. Based in part on the error in estimating the number of jobs, the court reversed and remanded the action. *Id*.

Unlike in *Viverette*, without both the newspaper carrier and cafeteria attendant jobs numbers, the cleaner/housekeeper position has about 220,000 jobs in the national economy. Plaintiff does not challenge this finding. These remaining jobs are approximately 64% of the total number of jobs for all three occupations. Thus, the Court is left with the vocational expert's testimony and the ALJ's finding that Plaintiff is able to work in 220,000 jobs in the national economy. The Eleventh Circuit has held that 78,000 jobs and other jobs with similar numbers amounted to "substantial evidence to support the ALJ's finding on step five." *See Valdez v.*

*Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020); *see also Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) ("The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number. . . . We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers."). Based on the unchallenged finding that the cleaner/housekeeper position had approximately 220,000 jobs in the national economy and based on the number of jobs representing approximately 64% of the possible total jobs, substantial evidence supports the ALJ's decision. Thus, even if the ALJ erred in the number of jobs for the other two positions, the error is harmless and remand unwarranted.

### B. Conflict Between DOT and Vocational Expert's Testimony

Plaintiff argues that the jobs of newspaper carrier and cafeteria attendant may require more than occasional contact with the public. (Doc. 13, p. 19). Plaintiff also argues that the vocational expert used the incorrect DOT code for the newspaper carrier job. (Doc. 13, p. 16-17).

For any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty

means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

Any error in the ALJ's conclusion that Plaintiff could perform the jobs of newspaper carrier and the cafeteria attendant are harmless because the ALJ identified another job—cleaner/housekeeper—that Plaintiff is qualified to do considering his age, education, work experience, and RFC. *See Valdez*, 808 F. App'x at 1009.[2] Relying on the vocational expert's testimony, the ALJ found the job of cleaner/housekeeper has 220,000 jobs that exist in the national economy. (Tr. 32). For these reasons, substantial evidence supports the ALJ's decision.

### III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied

---

[2] Plaintiff mentions at one point that the vocational expert testified that cleaner/housekeeper position would have less than occasional contact with the general public, but neither develops an argument around this statement nor cites authority on this issue, and it is therefore waived. . *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim).

the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

    **DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2022.

*/s/ Douglas N. Frazier*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties